SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

STEPHEN PARK, THOMAS YANG, PAUL LEE and ANDREW CHANG, all individually and on behalf of KORILLA BBQ, LLC,

　　　　　　　　　　Plaintiffs,

　　-against-

EDWARD SONG, DAVID IM, KORILLA BBQ, LLC, KORILLA EAST VILLAGE TRUCK, INC., WHITE TIGER NAMED KORILLA, LLC, LET GROUP, LLC, MOKBAR, LLC, MOKBAR II, LLC, AEGIS 233 LLC, ESTHER CHOI, HARDY CHUNG and YOUNG SUN SONG,

　　　　　　　　　　Defendants.

Index No.  650186/17

COMPLAINT

---

　　　　　Plaintiffs Stephen Park, Thomas Yang, Paul Lee and Andrew Chang, all individually and on behalf of Korilla BBQ, LLC, by their attorneys The Silber Law Firm, LLC, for their Complaint against defendants Edward Song, David Im, Korilla BBQ, LLC, Korilla East Village Truck, Inc., White Tiger Named Korilla, LLC, LET Group, LLC, Mokbar, LLC, Mokbar II, LLC, Aegis 233 LLC, Esther Choi, Hardy Chung and Young Sun Song, complain and allege as follows:

　　　　　1.　　　Plaintiffs Park, Yang, Lee and Chang are residents of Queens, New York and members of Korilla BBQ, LLC, together with defendants Edward Song ("E. Song") and David Im.

　　　　　2.　　　Korilla BBQ, LLC is a New York State limited liability company.  Korilla BBQ is in the food service business, selling Korean-Mexican barbeque.

　　　　　3.　　　The individual defendants reside, upon information and belief, in Queens and Kings Counties.

4.      Defendants Aegis, LLC and Mokbar II, LLC are New York State Limited

Liability Companies and are located in New York County.  Defendants Hardy Chung and

Esther Choi control these two LLC entities, respectively.

5.      The remaining LLC entity defendants are New York State Limited Liability

Companies with their principal places of businesses located in New York City.

6.      Upon information and belief, defendant E. Song purports to hold interests in

Korilla BBQ, LLC, Korilla East Village Truck, Inc. ("Korilla East"), White Tiger Named Korilla,

LLC ("White Tiger Korilla") and LET Group, LLC.

7.      Korilla East and White Tiger Korilla are operated by E. Song.

8.      Among other things, E. Song stole the business of Korilla BBQ and used LET

Group, White Tiger Korilla and Korilla East to actively compete with it, and then destroyed

Korilla BBQ with his misconduct.

9.      Upon information and belief, defendant Esther Choi has an interest in the two

defendant Mokbar entities and operates them as restaurants.

10.     Upon Information and belief, defendant E. Song has an interest in those

Mokbar entities.

11.     Defendant Im, upon information and belief, is partners with defendant E.

Song in the LLC entities identified in ¶ 6.

12.     Defendant Young Sun Song is the mother of defendant E. Song.

13.     This case addresses, among other things, plaintiffs' allegations that

defendant E. Song has (i) converted the business and assets of Korilla BBQ, (ii) improperly

competes with Korilla BBQ by using Korilla BBQ's intellectual property and by

misrepresenting his businesses to the public, (iii) plays off the goodwill and reputation of

Korilla BBQ, (iv) has violated every duty and obligation owed to his co-members in Korilla

2

Case 1:20-cv-00077-BMC     Document 1-2     Filed 01/06/20     Page 3 of 25 PageID #: 10

BBQ and (v) has effectively killed off Korilla BBQ and its business.

14.     E. Song has not just stolen Korilla BBQ's intellectual property, but has illicitly transferred that property to defendant LET Group, LLC, an entity controlled by E. Song, and used that highly visible intellectual property to compete with and destroy Korilla BBQ.

15.     The remaining defendants have either assisted E. Song in taking assets of Korilla BBQ or have been the knowing recipient of gifts or purported investments from E. Song using money stolen from Korilla BBQ.

16.     This action is also brought derivatively as some of the claims herein overlap with the individual plaintiffs' allegation of damage to Korilla BBQ, LLC but is separate from the allegations by the individual plaintiffs.

17.     As a result of this conduct, plaintiffs have been irreparably harmed in myriad ways, requiring not just money damages but injunctive and other equitable relief.

### *Background*

**A.      The Food Truck Concept and Business**

18.     In 2009 plaintiff Stephen Park and defendant E. Song joined to open a restaurant.

19.     Thereafter, they decided to begin operating a "food truck" focusing on Korean-Mexican barbeque.

20.     This concept was a success.

21.     In 2010, as the food truck proved to be successful and its business thrived, Park operated and managed the daily business of the truck while E. Song managed the back office, and also tried to raise capital to expand the food truck concept.

22.     The two treated their business as equal partners, although no formal

3

agreement had been executed between them.

23.     E. Song aggressively sought growth opportunities but was unable to procure sufficient funds or complete his merger ideas.

24.     The truck business remained profitable.

25.     Later in 2010, plaintiffs Thomas Yang and Paul Lee, non-party Eric Yu and defendant David Im invested approximately $180,000 into Korilla BBQ for the purpose of purchasing two additional food trucks and a commissary, and for building out a company office.

26.     A First Amended and Restated Operating Agreement of Korilla BBQ, LLC, with a date of November 2, 2010, was prepared but not executed by all of the parties thereto (the "Operating Agreement").

27.     The Operating Agreement signed only by E. Song, Thomas Yang and Eric Yu, provided, in part, that:

(i)  all assets would be held by and for Korilla BBQ;

(ii)  E. Song was the Manager, who was obligated to use appropriate care in his duties and devote sufficient time to do so;

(iii)  included confidentiality and non-compete provisions for the members;

(iv)  required the maintenance of company books and records, which were available for member inspection; and

(v)  specifically required that all company income was to be deposited into bank accounts, which were not to be commingled with E. Song's money or accounts.

28.     The Operating Agreement did not provide the parties' ownership interest in Korilla BBQ.

29.     Lee assisted in the trucks' unique design.  Park was the most knowledgeable in selecting tools and equipment for the commissary and organizing the truck, and in charge

4

Case 1:20-cv-00077-BMC   Document 1-2   Filed 01/06/20   Page 5 of 25 PageID #: 12

of the truck's production and food organization.

30.    E. Song had no knowledge of these areas.

31.    The food truck business was at this time generally receiving substantial publicity, with Korilla BBQ's business singled out as a successful venture in the food truck business.

32.    Additionally, E. Song controlled defendant LET Group and wanted to and did transfer Korilla BBQ's intellectual property to that entity so as to cut out some of Korilla BBQ's members from the benefits of that valuable property.

33.    A Memorandum of Agreement, dated February 9, 2011, between E. Song and Korilla BBQ, signed by E. Song, Thomas Yang and Eric Yu, purported to pay LET Group 15% of Korilla BBQ's net profits for "licensing and/or franchise fee."

34.    This agreement seemed intended to act as a cover for payments that E. Song funneled from Korilla BBQ to LET Group, an entity in which he held a substantial interest.

35.    Yang never received any distributions from LET Group.

36.    This agreement was a means for E. Song to skim money from Korilla BBQ with the veneer of a proper business arrangement.

37.    Thereafter, at E. Song's request, Yang sold to Andrew Chang 2.5% of his interest in Korilla BBQ for $10,000.  Chang would be a manager on one of the trucks.

38.    Korilla BBQ's membership interest was held by E. Song (41.7%), Stephen Park (12.67%), Thomas Yang (14.73%), Eric Yu (6.94%), David Im (8.33%), Paul Lee (13.13%) and Andrew Chang (2.5%).

39.    During this time, as before, Korilla BBQ's business was fast-paced and required long days on the trucks.

40.    E. Song, however, did not participate in the work on the truck in any

5

Case 1:20-cv-00077-BMC   Document 1-2   Filed 01/06/20   Page 6 of 25 PageID #: 13

meaningful way.

**B.    Korilla's Business Receives Substantial Attention**

41.    The Korilla BBQ food trucks were doing well and continuing to build a reputation and following among both "foodies" and the press.

42.    Korilla BBQ moved to an upgraded commissary to better prepare its food.

43.    In early 2011, while the new trucks were being brought to use in Korilla BBQ's business, the individuals learned that Korilla BBQ was selected to receive an invitation to compete in a nationally televised show, called The Great Food Truck Race on the Food Network (the "Race").

44.    This was a prestigious selection which would bring Korilla BBQ substantial publicity and exposure and further cement its reputation as a primary player in the food truck and Korean-Mexican barbeque fast food business.

45.    The truck designs were uniquely built to allow quicker and more efficient delivery of the food which helped the truck compete in the Race.

46.    This exposure would bring Korilla BBQ meaningful work in corporate catering and other opportunities separate from retail sales off the trucks.

47.    Korilla BBQ was accepted into the Race and Lee, Park and E. Song attended the Race.

48.    One of the three food trucks was taken to the competition with the other two remaining on the street, operated by Im and Chang.

49.    This competition generated positive press and social media exposure for Korilla BBQ.

50.    The growth of Korilla BBQ's reputation allowed it to garner corporate catering work, and by just the Summer of 2011, generated almost $100,000 of income to Korilla

6

BBQ.

## C.      E. Song's Gross Misconduct and Theft of Company Assets and Business

51.      Upon return from the Race, Lee and the others discovered that the books and revenue records had not been properly kept.

52.      Lee took over most of the company bookkeeping, with Yang double-checking some of the work.

53.      Lee also overhauled Korilla BBQ's social media presence, including its substantial presence on Twitter, Instagram and Facebook, important tools for Korilla BBQ's business.

54.      Nonetheless, E. Song insisted that he take over the bookkeeping and suddenly, post-Race, wanted full control of Korilla BBQ.

55.      E. Song refused to allow anyone other than himself to control the business and banking records.  Park also had access to the bank account, but did not take care of the business's books.

56.      In October 2011, cash transfers were made from Korilla BBQ's bank account to accounts controlled by E. Song.

57.      No permission was requested or obtained, nor did E. Song provide any disclosure for these transfers.  These transfers of company funds were made without authorization and for the personal benefit of E. Song and, upon information belief, E. Song's subsequent transfer to the other defendants.

58.      These transfers were not for Korilla BBQ's benefit or business interests.

59.      As plaintiffs would later learn, in addition to his personal use of company funds, over time, E. Song used company funds to provide gifts and seed money to, among others, (i) entities that would compete with Korilla BBQ, including LET Group, Korilla East

7

Case 1:20-cv-00077-BMC   Document 1-2   Filed 01/06/20   Page 8 of 25 PageID #: 15

and White Tiger Korilla (ii) his girlfriend defendant Esther Choi and her entities defendants Mokbar, LLC and Mokbar II, LLC (iii) a friend and partner, defendant Hardy Chung and his entity, Aegis 233, LLC, and (iv) his mother, defendant Young Sun Song, who it is believed to have transferred those funds out of the country.

60.    E. Song also used Korilla BBQ funds to renovate his parents' personal property under the guise of the space being used for Korilla BBQ.  That was never the case.

61.    E. Song also converted Korilla BBQ's intellectual property and transferred that to LET Group.

62.    Specifically, in 2011, Korilla BBQ received federal trademark registrations for the KORILLA BBQ logo, and the KBBQ and KORILLA marks.

63.    Thereafter, E. Song, acting alone, filed assignment documents by which he assigned and transferred these valuable marks from Korilla BBQ to defendant LET Group.

64.    Upon information and belief, LET Group paid no consideration for these valuable assets.

65.    Upon information and belief, these transfers were intended to steal Korilla BBQ's assets for E. Song and his associates' benefit.

66.    In 2016, E. Song applied for registration of the KORILLA mark for catering services, with LET Group as the applicant.  That registration is pending.

67.    As time went on, in 2012, E. Song's girlfriend took E. Song away from the business, leading to his mismanagement of the finances of the business and his need for cash.

68.    He thus helped himself to company monies to support his lifestyle.

69.    When challenged with this misconduct, E. Song demurred but did not deny his theft, and promised to repay the stolen funds.

8

Case 1:20-cv-00077-BMC    Document 1-2    Filed 01/06/20    Page 9 of 25 PageID #: 16
INDEX NO. 650186/2017
RECEIVED NYSCEF: 02/27/2017

70.     Because the company revenue was largely cash, certainly for sales from the truck, tight controls were necessary to properly manage and record revenues.

71.     Despite his promises, E. Song refused to implement appropriate controls or to relinquish control of the accounting and banking.

72.     He did this so that he could siphon off company funds for his personal use, knowing that tracking those cash funds was difficult.

73.     E. Song was not involved in a meaningful way in day to day business of the trucks but knew that because of the success of the truck-based business and its fast-paced sales, the others would have difficulty monitoring his conduct.

74.     E. Song could also exhibit a volatile personality.

75.     E. Song knew this and given his "management" role with the business was able to control the cash of the business and act with a free hand.

76.     As a result of this conduct, the business was often faced with a cash-flow shortfall.

77.     Things came to a head when a literal trail of cash, in large denominations, was found on the street in front of E. Song's house, leading into the house.

78.     While E. Song continued to refuse to cooperate with Lee and the plaintiffs to steady Korilla BBQ and account for missing money, he did admit to giving money to his mother, who transferred the money to unspecified people in South Korea.

79.     E. Song promised to try to get those funds returned.

80.     Lee tried to go through the company books, but E. Song and his girlfriend refused to cooperate.

81.     To keep Korilla BBQ afloat, Lee paid approximately $15,000 out of pocket to cover critical company bills.  Lee expected to be repaid.

9

Case 1:20-cv-00077-BMC   Document 1-2   Filed 01/06/20   Page 10 of 25 PageID #: 17

82.     At this point, being abused by E. Song and frustrated, Lee backed off of the company management.

83.     Plaintiffs at this point had no idea how the company was managed, as E. Song and his girlfriend oversaw the operations of the trucks.

84.     During this time, E. Song claims to have built offices for Korilla BBQ's business in his parents' property, investing substantial funds, but which were never used by Korilla BBQ.

85.     E. Song and his girlfriend instead lived at that property.

86.     In early 2013, E. Song's mismanagement led to the permit and license fees for two trucks to go unpaid, something not then known to plaintiffs, leading to the two trucks being suspended from street operations crippling Korilla BBQ and removing it from its street business and street visibility.

87.     While the trucks were off the street, equipment was stolen off them and from the commissary.

88.     Due to E. Song's behavior, Korilla BBQ's business quickly collapsed.

89.     In an effort to reverse the situation, Lee made overtures to E. Song, and Yang threatened a lawsuit, hoping that E. Song would at least release the banking and social media accounts to the others.

90.     The parties worked valiantly to revive Korilla BBQ's business, despite E. Song's involvement.

91.     Lee was able to secure a catering deal, using those proceeds to pay the license and permit fees which allowed the trucks to return to the street.

92.     Plaintiffs worked at a fever pitch to restore Korilla BBQ's reputation.

93.     Over the Summer of 2013, more catering work was forthcoming, including

10

Case 1:20-cv-00077-BMC   Document 1-2   Filed 01/06/20   Page 11 of 25 PageID #: 18

highly visible work, and revenue improved.

94.    E. Song's ongoing management and bank account access was a source of serious concern among the individual plaintiffs.

95.    Finally, E. Song agreed that Im would take over the company's books and that he would step back from an active role with Korilla BBQ.

96.    Im would also control the commissary and oversee the trucks.

97.    While the individual plaintiffs did not believe that this was the best approach they felt that E. Song had to be replaced and agreed.

98.    However, E. Song was able to maintain access to the bank accounts as he was the account signatory, thus allowing him to continue taking Korilla BBQ funds.

**D.    Defendants' Compete with Korilla BBQ**

99.    Because E. Song had refused to pay company bills the individual plaintiffs were forced to either do so from their pockets or make arrangements with the vendors.

100.    In early 2014, E. Song tried to open a storefront business called Korilla FiDi with defendant David Im.

101.    E. Song and Im specifically tried to piggy-back off the name recognition of Korilla BBQ in trying to open Korilla FiDi.

102.    In doing so, without the knowledge of the individual plaintiffs, E. Song pledged the assets of Korilla BBQ to secure a loan for this store.

103.    His effort to open this store failed as E. Song was unable to secure sufficient investors or funding.

104.    At a later meeting E. Song discussed with Lee and Chang options by which he could form a "new Korilla" entity, but without the remaining members.

105.    Plaintiffs would later learn that this was not the first time that E. Song

11

discussed a scheme by which he would take the Korilla name and business assets and form a new entity with only some of the current Korilla BBQ members.

106.    Around June 2014, E. Song sold one of Korilla BBQ's trucks to another food truck business, but pocketed those sale proceeds.

107.    E. Song then left for South Korea.

108.    Before leaving, however, he began to build out a storefront, located in the East Village.

109.    When E. Song returned from South Korea, in October 2014, this store opened to compete with Korilla BBQ, using Korilla BBQ's trademark, trade secrets, money, employees, equipment and inventory.

110.    E. Song also terminated the individual plaintiffs' email accounts and changed the passwords to Korilla BBQ's social media accounts.

111.    This access was and remains critical to Korilla BBQ's sales and success, especially as to the truck business because that business communicated and promoted itself to its customers via social media.

112.    Social media was even more critical to Korilla's growth after the exposure earned by the Race.

113.    Despite his promise to back off from Korilla BBQ's business, E. Song demanded that the trucks be sold to defendant Hardy, who would operate them with plaintiffs.

114.    That demand was rejected by plaintiffs.

115.    While his store was being built, E. Song approached Im, who was often at the commissary where the company trucks were parked, and together they took all of Korilla BBQ's equipment and inventory.

12

Case 1:2b-cv-00077-BMC    Document 1-2    Filed 01/06/20    Page 13 of 25 PageID #: 20

116. This was nothing less than outright theft and crippled Korilla BBQ.

117. E. Song also refused to pay the vendors of Korilla BBQ.

118. All of this prevented the trucks from operating.

119. Lee and the others confronted Hardy who arranged for the return of the equipment and personally paid for the stolen inventory.

120. Lee and Park could not fight with E. Song and also operate the trucks, so they focused on the trucks.

121. At the same time, E. Song would direct some of the catering jobs to the trucks but take the proceeds of those jobs as soon as the checks were deposited.

122. Another example of E. Song's theft of Korilla BBQ's bank funds was a Groupon promotion for Korilla BBQ's truck that he launched.

123. This promotion allowed for the truck customers to buy a coupon entitling them to a discounted meal from the truck.

124. E. Song did not inform plaintiffs of this promotion so that customers showed up to the truck with discounted coupons, without allowing the truck to prepare for the onslaught of customers.

125. Not honoring the Groupon promotion was not a viable option for the trucks, as it would face a disgruntled public.

126. The proceeds of this promotion was paid by Groupon by check to Korilla BBQ, the proceeds of which E. Song simply took from the Korilla BBQ bank account.

127. At this point, in 2015, one truck remained operational for plaintiffs.

128. E. Song's store called Korilla BBQ, but operated under Korilla White Tiger or LET Group, was operational and actively and openly competing with Korilla BBQ.

129. From this point on, while in control of Korilla BBQ's social media accounts

13

and email communications, E. Song continued to usurp and steal numerous opportunities that were intended for Korilla BBQ.

130.    Separate from his competition, E. Song's misconduct caused obvious confusion and actual lost sales and opportunities for Korilla BBQ.

131.    E. Song impersonated and used the Korilla BBQ name to steal those business opportunities including very valuable and highly visible catering jobs.

132.    Because E. Song maintained his access to Korilla BBQ's bank account, and because the proceeds of the truck's catering jobs were deposited into these accounts, E. Song was able to take the funds generated by the truck's catering jobs.

133.    Some of these checks were mailed to E. Song's house.

134.    This went on for about a year.

135.    In 2016, Korilla BBQ's last truck was booted and towed due to unpaid parking tickets.

136.    Plaintiffs did not know the extent of these tickets because they were mailed to E. Song's house and E. Song never informed plaintiffs of the matter.

137.    While the truck was towed, it ended up in the possession of defendant Choi, E. Song's girlfriend.

138.    At this point E. Song and his associates had killed off Korilla BBQ.

139.    In March 2016, Lee worked on raising funds to repair one of the old trucks to bring it back to the street.

140.    E. Song knew this, and told Lee that he had a buyer for the truck.  Lee refused.

141.    Despite this refusal, Lee and the others later learned that E. Song had sold that truck and pocketed the funds.

14

Case 1:20-cv-00077-BMC   Document 1-2   Filed 01/06/20   Page 15 of 25 PageID #: 22

142.   E. Song was aware that plaintiffs intend to repair this truck and bring it back to the street.

143.   E. Song's theft and subsequent sale of this truck was intended to prevent plaintiffs from doing so.

144.   E. Song was able to access the trucks, parked at the commissary, as the facilities serviced a number of food truck businesses so that access was not difficult.

145.   This continued the pattern of E. Song's efforts to sabotage Korilla BBQ's truck, including by stealing the truck's generator and its license plates, with the assistance of defendant Im.

146.   E. Song even took the street parking/selling spots long-held by Korilla BBQ in his effort to first prevent plaintiffs from operating Korilla BBQ and later to steal that business by improperly and unfairly competing.

147.   An additional motivation for E. Song's efforts to put plaintiffs' trucks out of business or at least off the street was that his competing trucks were able to take the place of plaintiffs' disabled trucks and reap the proceeds of the trucks' substantial cash sales.

148.   Thus, as of March 2016, Korilla BBQ was unable to operate.

149.   E. Song, however, has trucks on the street, impersonating Korilla BBQ and continues to open stores, his latest called KBBQ by Korilla, and build his stolen brand.

150.   At no time did E. Song dedicate his efforts to further Korilla BBQ's business. E. Song's approach was to find a way to at some point and in some way to steal the business and its opportunities for himself.

151.   He did this while allowing and encouraging the individual plaintiffs to literally build the business of Korilla BBQ from the ground up to become a name brand business with a substantial reputation and visibility.

15

Case 1:20-cv-00077-BMC    Document 1-2    Filed 01/06/20    Page 16 of 25 PageID #: 23

152.    E. Song then used that reputation for his benefit by representing that his businesses were Korilla BBQ and its affiliates.

153.    At the end, E. Song was successful in killing off Korilla BBQ while at the same time taking its revenue, assets and business reputation for his own benefit.

154.    Currently, to plaintiffs' knowledge, E. Song operates multiple stores and a truck that is nearly identical to the one that plaintiffs had operated.

155.    Korilla BBQ's truck and retail location in New York City are currently operated by defendant LET Group.

156.    Plaintiffs do not share in the benefit of those businesses to their ongoing and irreparable harm.

157.    E. Song's misconduct was not only intended to benefit himself, but also those associated with him, including defendants Im, Hardy and Choi, and their businesses and entities.

158.    Because there was no board of Korilla BBQ, any demand upon E. Song and David Im to commence this litigation on behalf of Korilla BBQ would have been futile, as E. Song was the individual and driver behind every allegation that has destroyed plaintiffs' business.

AS AND FOR A FIRST CAUSE OF ACTION
(*Accounting against all Defendants*)

159.    Plaintiffs repeat and reallege all of the forgoing.

160.    Upon information and belief, E. Song funneled money that he stole from Korilla BBQ to the other defendants for personal use or as some investment or loan to other businesses.

161.    E. Song had no right or authority to do so.

16

162.     Despite demand for the restoration of those funds, and E. Song's agreement to do so, the stolen funds were never returned.

163.     As a result, Korilla BBQ was damaged, in some cases irreparably damaged, by the ongoing cash shortfall which resulted from this theft and misconduct.

164.     Each of the defendants that received this illicit money benefitted from it, to the detriment and damage of Korilla BBQ.

165.     Upon information and belief, the recipients of this money were aware or should have been aware that the source of the money was not E. Song, and that the money was not properly provided by him.

166.     Korilla BBQ does not know, and has no good way to know how much money E. Song took and how much the recipients received.

167.     Korilla BBQ has no adequate remedy at law.

168.     Accordingly, this Court should direct that an accounting of defendants be provided to plaintiffs.

### AS AND FOR A SECOND CAUSE OF ACTION
(*Unjust Enrichment against all Defendants*)

169.     Plaintiffs repeat and reallege all of the forgoing.

170.     The monies received by defendants did not belong to them and they have no viable claim to those monies.

171.     Allowing those defendants that received funds from or via E. Song to keep those funds would be unjust, allowing them to reap an undeserved windfall and damage plaintiffs.

172.     Accordingly, defendants have been unjustly enriched and plaintiffs are entitled to recover, jointly and severally as applicable from those defendants, in an amount

17

Case 1:20-cv-00077-BMC   Document 1-2   Filed 01/06/20   Page 18 of 25 PageID #: 25

to be determined at trial, plus interest and costs.

AS AND FOR A THIRD CAUSE OF ACTION
(*Declaratory Relief against LET Group, LLC*)

173.    Plaintiffs repeat and reallege all of the forgoing.

174.    The Federal trademark registration for **KORILLA** was obtained by Korilla

BBQ on May 31, 2011, under registration number 3971933 in Class 35, for retail foods

services and "mobile street vendor services featuring food and drink."

175.    Before the registration was even issued, by Assignment dated July 30, 2010

and filed and recorded on November 6, 2010, E. Song transferred the **KORILLA** application

to LET Group, LLC.

176.    The Federal trademark registration for **KORILLA BBQ LOGO and WORD**

mark was obtained by Korilla BBQ on September 13, 2011, under registration number

4068272 in Class 35, for retail foods services and "mobile street vendor services featuring

food and drink."

177.    By Assignment dated November 29, 2011, and recorded on June 16, 2014,

but dated *nunc pro tunc* with an effective date of December 15, 2011, E. Song transferred

the **KORILLA BBQ LOGO and WORD** mark to LET Group, LLC.

178.    The Federal trademark registration for **kbbq** was obtained by Korilla BBQ on

November 15, 2011, under registration number 4056254 in Class 35, for retail foods

services and "mobile street vendor services featuring food and drink."

179.    By Assignment dated November 15, 2011, and filed and recorded on June

16, 2014, but dated *nunc pro tunc* with an effective date of December 15, 2010, E. Song

transferred the **kbbq** mark to LET Group, LLC.

180.    Upon information and belief, these assignments are legally ineffective,

18

INDEX NO. 650186/2017

RECEIVED NYSCEF: 02/27/2017

Case 1:20-cv-00077-BMC   Document 1-2   Filed 01/06/20   Page 19 of 25 PageID #: 26

although the assignments have been accepted as a practical matter.

181.    These three trademark registrations are referred to as the "Korilla Marks."

182.    LET Group currently operates businesses that use the Korilla Marks as an integral component of its businesses.

183.    LET Group has reaped substantial income and profits as a result of its misappropriation and misuse of the Korilla Marks.

184.    Upon information and belief, no consideration was paid for the assignments of the Korilla Marks.

185.    E. Song is the sole or principal member of LET Group.

186.    E. Song transferred the Korilla Marks, the property of Korilla BBQ, for his own benefit and for the benefit of LET Group.

187.    None of the individual defendants are members of LET Group or otherwise receive any benefit from that entity.

188.    E. Song hid these assignments from plaintiffs.

189.    The assignments of the Korilla Marks were made without any member vote and E. Song had no authority to effectuate these assignments.

190.    The Korilla Marks belong to Korilla BBQ.

191.    Accordingly, this Court should declare that Korilla BBQ is the only and rightful owner of the Korilla Marks.

192.    Plaintiffs have been irreparably harmed by this misconduct and have no adequate remedy at law.

AS AND FOR A FOURTH CAUSE OF ACTION
(*Conversion against LET Group, LLC and Edward Song*)

193.    Plaintiffs repeat and reallege all of the forgoing.

19

Case 1:20-cv-00077-BMC   Document 1-2   Filed 01/06/20   Page 20 of 25 PageID #: 27

194.   As alleged, E. Song and LET Group have taken the Korilla Marks which belong to Korilla BBQ.

195.   As such, E. Song and LET Group have converted for themselves valuable property belonging to Korilla BBQ.

196.   Accordingly, defendants LET Group and E. Song are liable to plaintiffs, jointly and severally, in an amount to be determined at trial, plus interest and costs.

197.   Such conduct was done in conscious disregard of plaintiffs' rights and undertaken to steal Korilla BBQ's valuable property, and punitive damages in an amount not less than 10 times the damages awarded should be assessed.

### AS AND FOR A FIFTH CAUSE OF ACTION
(*Transfer Order against LET Group, LLC and Edward Song*)

198.   Plaintiffs repeat and reallege all of the forgoing.

199.   Given that Korilla BBQ is the true owner of the Korilla Marks and that the assignments were made without authority or consideration, this Court should order that LET Group and E. Song reverse the assignments and transfer and turn over to Korilla BBQ all of LET Group's purported rights in and to the Korilla Marks, and to be responsible for all costs involved in doing so, jointly and severally, plus damages to be ascertained at trial.

### AS AND FOR A SIXTH CAUSE OF ACTION
(*Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing against Edward Song*)

200.   Plaintiffs repeat and reallege all of the forgoing.

201.   E. Song and Korilla BBQ had an agreement in place whereby E. Song, as Manager of Korilla BBQ, would execute his duties in the best interest of Korilla BBQ.

202.   Separately, E. Song agreed with the individual plaintiffs to operate Korilla BBQ in good faith and for the benefit of plaintiffs and E. Song.

20

Case 1:20-cv-00077-BMC   Document 1-2   Filed 01/06/20   Page 21 of 25 PageID #: 28

203.    As alleged above, E. Song did not do that, instead taking affirmative steps to injure Korilla BBQ and the individual plaintiffs.

204.    E. Song's conduct was done without right or reason, recklessly and in bad faith.

205.    Accordingly, E. Song has breached his contract and contractual obligations to plaintiffs, alleged derivatively and individually, and is liable to plaintiffs in an amount to be awarded at trial, plus interest and costs.

### AS AND FOR A SEVENTH CAUSE OF ACTION
(*Prima Facie Tort against Edward Song and David Im*)

206.    Plaintiffs repeat and reallege all of the forgoing.

207.    The conduct of E. Song and Im as alleged was undertaken intentionally and in bad faith, motivated by disinterested malevolence, and with the specific intent to harm plaintiffs and deprive them of their property.

208.    As a result, plaintiffs have been caused substantial and irreparable harm.

209.    This harm was or should have been expected by E. Song but was ignored and disregarded.

210.    Instead, he acted to further their own interests at plaintiffs' expense.

211.    As such, plaintiffs have been damaged, and E. Song is liable, under the theory of *prima facie* tort, in an amount to be determined at trial, plus interest and costs, but not less than $3 million.

212.    The conduct alleged was undertaken in conscious disregard of plaintiffs' rights so that punitive damages in the amount 10 times the amount of damages awarded should be assessed.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
(*Breach of Fiduciary Duties against Edward Song and David Im*)

21

Case 1:20-cv-00077-BMC    Document 1-2    Filed 01/06/20    Page 22 of 25 PageID #: 29

213.    Plaintiffs repeat and reallege all of the forgoing.

214.    E. Song and Im, as members and/or Manager of Korilla BBQ, owed the individual plaintiffs absolute fidelity and fiduciary duties in connection with operations and management of Korilla BBQ and its business.

215.    E. Song and Im, in bad faith, did not do so, instead acting in their own interest and against plaintiffs' interests.

216.    As such, E. Song and Im have breached their fiduciary duties to plaintiffs and are liable to them in an amount to be determined at trial but not less than $3 million, jointly and severally, plus interest and costs.

## AS AND FOR A NINTH CAUSE OF ACTION
(*Breach of Duties of Loyalty and Care against Edward Song and David Im*)

217.    Plaintiffs repeat and reallege all of the forgoing.

218.    E. Song and Im owed plaintiffs duties of loyalty, care, and obedience.

219.    Included in those duties were their obligation not to steal business opportunities, transfer away valuable business assets, compete with Korilla BBQ and mislead the individual plaintiffs in connection with that gross misconduct.

220.    But E. Song and Im did do all of those things, knowingly, and with the intent to injure plaintiffs and enrich themselves and their associates.

221.    As such, E. Song and Im have breached their fiduciary duties to plaintiffs and are liable to them in an amount to be determined at trial but not less than $3 million, jointly and severally, plus interest and costs.

## AS AND FOR A TENTH CAUSE OF ACTION
(*Unfair Business Practices against E. Song, Im, Chung, Korilla East Village Truck, Inc., White Tiger Named Korilla, LLC and LET Group, LLC*)

222.    Plaintiffs repeat and reallege all of the forgoing.

22

Case 1:20-cv-00077-BMC    Document 1-2    Filed 01/06/20    Page 23 of 25 PageID #: 30

223.    Defendants E. Song, Im, Chung, Korilla East Village Truck, Inc., White Tiger Named Korilla, LLC and LET Group, LLC own and operate the businesses, stores and restaurants, and food trucks alleged herein.

224.    Each of these parties are knowingly engaged in ventures that employ the stolen assets and property of Korilla BBQ.

225.    Each of these parties have knowingly duped and mislead the public to believe that they are plaintiff Korilla BBQ.

226.    Each of these parties have taken substantial monies that were intended to be paid to Korilla BBQ and have been enriched by their fraud and misrepresentation.

227.    Each of these parties have violated New York General Business Law §§ 133 and 349.

228.    Each of these parties have violated New York Business Corporation Law § 301.

229.    Each of these parties has undertaken the unlawful conduct alleged herein through the misappropriation of Federal trademark registrations that belong to Korilla BBQ.

230.    The conduct of these parties has damaged the reputation of Korilla BBQ and its registered trademarks.

231.    Each of these parties have done this intentionally and with the knowledge that Korilla BBQ would be forced to close its business.

232.    The conduct of these parties was in manifest bad faith and designed to steal the business of Korilla BBQ.

233.    Accordingly, these parties are liable to Korilla BBQ for their unfair business practices, in an amount to be determined at trial, jointly and severally, together with interests and costs.

23

Case 1:20-cv-00077-BMC   Document 1-2   Filed 01/06/20   Page 24 of 25 PageID #: 31

234. The conduct of these parties was shocking and intended to deprive Korilla BBQ of its business and assets while enriching these defendants.

235. This conduct has in fact destroyed Korilla BBQ and irreparably injured plaintiffs.

236. As such, punitive damages should be awarded at trial, but not less than $25 million, jointly and severally.

WHEREFORE, plaintiffs demand that judgment be entered in their favor and against defendants, jointly and severally as alleged in each Cause of Action, as follows:

(i)   on their First Cause of Action, for an accounting, in an amount to be determined at trial, plus interest;

(ii)  on their Second Cause of Action, for unjust enrichment, in an amount to be determined at trial, plus interest;

(iii) on their Third Cause of Action, for declaratory relief, in an amount to be determined at trial, plus interest;

(iv)  on their Fourth Cause of Action, for conversion, in an amount to be determined at trial, plus interest; and for a punitive damages award of not less than 10 times the amount awarded or such other amount as the Court may determine;

(v)   on their Fifth Cause of Action, for a transfer order;

(vi)  on their Sixth Cause of Action, for breach of contract, and the breach of the covenant of good faith and fair dealing, in an amount to be determined at trial, plus interest;

(vii) on their Seventh Cause of Action, for *prima facie* tort, in an amount to be determined at trial but not less than $3million, plus interest; and for a punitive damages award of not less than 10 times the amount awarded or such other amount as the Court may determine;

(viii) on their Eighth Cause of Action, for breach of fiduciary duties, in an amount to be determined at trial but not less than $3 million, plus interest;

(ix)  on their Ninth Cause of Action, for breach of duties of loyalty and care, in an amount to be determined at trial but not less than $3 million, plus

24

Case 1:20-cv-00077-BMC   Document 1-2   Filed 01/06/20   Page 25 of 25 PageID #: 32

interest; and

(x)     on their Tenth Cause of Action, for unfair business practices, in an amount to be determined at trial, plus interest; and for a punitive damages award of $25 million or such other amount as the Court may determine;

together with plaintiffs' costs and expenditures in litigating this case, plus interest, jointly and severally, and such other and further relief for plaintiffs and against defendants that the Court deems just and proper.

Dated: February 27, 2017

THE SILBER LAW FIRM, LLC

By _____

Meyer Y. Silber
*Attorneys for Plaintiffs*
11 Broadway, Suite 715
New York, New York 10004
Tel.: (212) 765-4567

25